**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Pate, | No. CV-25-03173-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| National Association of Intercollegiate Athletics, | |
| Defendant. | |

Pending before the Court is Plaintiff Ryan Pate's motion for a temporary restraining order ("TRO") and preliminary injunction to require Defendant the National Association of Intercollegiate Athletics ("NAIA") to allow him to play a final season of college basketball at Park University's ("Park") Gilbert, Arizona campus. (Doc. 3.) Because Pate has not met his burden of demonstrating that he has standing to seek injunctive relief, his motion is **denied**.

**I.   FACTUAL BACKGROUND**

Pate is a "graduate college athlete attending Park . . . at its satellite campus in Gilbert, Arizona." (Doc. 1 ¶ 19.) The NAIA is "an unincorporated private association that acts as a governing body of college sports" for "over 230 member colleges and universities," including Park. (*See id.* ¶¶ 19–20.)

"The NAIA and its members have adopted regulations governing all aspects of college sports," including "Attendance-Based Restrictions" and other rules affecting eligibility. (*Id.* ¶ 20.) The Complaint challenges the NAIA's "ability to apply" a

"Termination of Eligibility" bylaw to prevent him from competing in the 2025–26 basketball season at Park. (*Id.* ¶ 3.) This rule provides that a "student terminates athletic eligibility at the end of a term upon completing [12 Terms of Attendance (in Pate's case)] in which the student is identified." (*Id.* ¶ 33 (alteration in original).) Ordinarily, a student's eligibility terminates once they reach a certain number of terms of attendance; here, the relevant limit was ten semesters, but the NAIA increased the limit to twelve semesters for athletes, like Pate, who played during the COVID-19 pandemic. (*See id.* ¶¶ 23, 30, 33.)[1] The NAIA defines a term of attendance as "any quarter, semester or trimester . . . in which the student becomes identified at a single institution." (*Id.* ¶ 33.)

Pate's athletic history before he enrolled at Park is as follows:

1. From 2018–19, Pate "enrolled at Mesa Community College where he used his athletic redshirt year and completed his first two Terms of Attendance." (*Id.* ¶ 21.)

2. From 2019–20, Pate "transferred to Central Arizona College where he completed his . . . third and fourth Terms of Attendance." (*Id.* ¶ 22.)

3. From 2020–21, Pate "competed for Central Arizona College during the shortened 2020-21 season," which constituted his "fifth and sixth Terms of Attendance." (*Id.* ¶ 23.)

4. From 2021–22, Pate "transferred to Southwestern Assemblies of God-American Indian College . . . where he completed his . . . seventh and eighth Terms of Attendance." (*Id.* ¶ 24.)

5. From 2022–23, Pate "transferred to the University of Arizona" and "completed his ninth and tenth Terms of Attendance." (*Id.* ¶ 25.)

6. From 2023–24, Pate "transferred [to] Northwest Indian College" and "completed 11.33 Terms of Attendance out of twelve." (*Id.* ¶ 26.) His terms of attendance

---

[1] The Court uses "semester" and "term of attendance" interchangeably in this Order with respect to the calculation of Pate's terms of attendance. The NAIA calculates the limits to terms of attendance differently depending on the institution's academic schedule: a "student terminates athletic eligibility at the end of a term upon completing 10 semesters, 12 trimesters or 15 quarters in which the student is identified." (Doc. 11-2 at 1.) Here, using "semesters" best matches Pate's calculation of the number of terms of attendance he completed.

were calculated in this manner because "neither [his] Spring 2024 nor Summer 2024 terms at [the University of Arizona] counted against his remaining Terms of Attendance," and he only enrolled at Northwest Indian College for "two quarters, which equals 1.33" semesters. (*Id.* ¶¶ 29–30.)[2]

Pate then committed to Park for the 2024–25 season, "pending his NAIA eligibility determination." (*Id.* ¶ 45.) Pate acknowledges now that, at the time he enrolled, he only had 0.67 semesters of eligibility remaining. (*See id.* ¶ 26.) Pate thus had only one semester left of eligibility because the NAIA permits a student to "play out a term if they have two-thirds of a term left." (*Id.* ¶¶ 35, 78; Doc. 11-2 at 1.)

In June 2024, the NAIA confirmed via email and in its PlayNAIA portal that Pate was eligible for the "Fall 2024 term," but also stated in the portal that "Pate had used 11.33 [semesters], and had 0.00 [semesters] remaining." (Doc. 1 ¶¶ 46–47; *see also id.* at 51–52.) Pate claims that the NAIA's statement that he had 0.00 semesters remaining was a "negligent misrepresentation" because the NAIA "should have stated that Pate retained 0.67" semesters, which would allow him to "play out a term." (*Id.* ¶ 48.) He also claims that "a clear declaration of eligibility despite Pate having '0.00' [semesters] remaining, made it unnecessarily difficult for Pate . . . to discern whether he actually had zero, one or two [semesters] remaining." (*Id.* ¶ 49.) He was given "no warning . . . by the NAIA or Park regarding his potential ineligibility after the Fall 2024" semester. (*Id.* ¶ 51.) Thus, Pate alleges he was "led to believe and reasonably concluded that he was eligible to play his entire final Season of Competition at Park in 2024-25," that is, both the Fall 2024 and Spring 2025 semesters. (*Id.* ¶ 49.)

In January 2025, on the eve of an "important . . . conference game[]," Pate's coaches informed him that there may be an "issue involving [his] eligibility." (*Id.* ¶¶ 60–61.) "This was the first time Pate was made aware that a problem existed, or that his eligibility was in jeopardy in any way." (*Id.* ¶ 61.) Park's Athletic Director then told Pate that he "only had

---

[2] Under the NAIA's rules, one quarter equals two-thirds of a semester. (Doc. 1 ¶ 28; Doc. 11-2 at 1.)

- 3 -

one [semester] to play when he enrolled at Park for the Fall 2024 [semester] and his last [semester of eligibility] was exhausted following the conclusion of the Fall 2024" semester. (*Id.* ¶ 63.)

Park appealed the eligibility decision to, and requested an exemption from, the NAIA but was unsuccessful. (*See id.* ¶¶ 64, 66, 68, 71, 73, 77.) After he received a final decision from the NAIA, Pate retained counsel to obtain NAIA records and was told that the NAIA's decision was final as of February 2025. (*See id.* ¶¶ 79–80.)

In June 2025, Pate asked the NAIA via email whether the NAIA "intend[ed] to extend or reconsider eligibility for the 2025-26 season in light of the recent federal court rulings . . . which enjoined the NCAA from applying institution and time-based eligibility limits in similar circumstances." (*Id.* ¶ 81.) The NAIA responded that it would not do so. (*Id.* ¶ 82.)

In July 2025, Pate "sent a formal letter to the NAIA requesting the organization to (1) confirm that [he would] be eligible to participate in the 2025–26 NAIA Men's Basketball season for Park, including both the Fall 2025 and Spring 2026 semesters, and (2) formally commit to enter confidential settlement discussions aimed at resolving the harm" he suffered. (*Id.* ¶ 83.) The NAIA responded that his "request for reinstatement of eligibility for the 2025–26 season [was] outside of NAIA policy." (*Id.* ¶ 94.)

Because his negotiation with the NAIA was unsuccessful, he brought suit in this Court. Pate alleges that, had he known he had only one semester of eligibility remaining, he would have questioned the legality of the NAIA's rules then or, in the very least, postponed enrollment until the Spring 2025 semester so that he could play in the consequential conference and championship games. (*See id.* ¶¶ 52, 62.) Pate further alleges he was unable to make an informed decision about how to use his last semester of eligibility because of the NAIA's negligent misrepresentations about his eligibility, that the NAIA's method of calculating terms of attendance unlawfully coerces students into the position of having to choose between semesters of play where the sport spans both semesters (Pate refers to this as the "season-splitting rule," (*see id.* ¶ 52)), and that his

inability to play in the Spring semester was detrimental to his basketball career. (*See id.* ¶¶ 122–23, 129–30.) Pate requests that the Court "[a]ward [him] a season of NAIA competition and eligibility to take place in 2025-26," along with damages and a permanent injunction prohibiting the NAIA from "enforcing NAIA Bylaws" against him. (*Id.* at 50.) The essence of Pate's motion for preliminary injunctive relief is his request to have his eligibility reinstated for the 2025–26 season. (*See* Doc. 3 at 1, 14; Doc. 12 at 8.) He agrees, however, that because he enrolled at Park full-time for the 2024–25 year, he "has now used 13.33 [semesters]." (Doc. 1 ¶ 95.)

## II.   PROCEDURAL HISTORY

On August 29, 2025, Pate filed his Complaint and motion for a TRO and preliminary injunction. (Docs. 1, 3.) He asserted claims under federal antitrust laws and for state-law negligent misrepresentation. (Doc. 1 at 45–49.)

The same day, the Court set a service of process and briefing schedule and a hearing. (Doc. 8.)

On September 8, 2025, the NAIA responded, (Doc. 11), and on September 10, 2025, Pate replied, (Doc. 12).

On September 12, 2025, the Court held a hearing. (*See* Doc. 13.)

## III.   LEGAL STANDARD

Courts may issue a TRO or preliminary injunction while an action is pending. *See* Fed. R. Civ. P. 65. To obtain either, a plaintiff must establish that he is (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[3] However, "if a plaintiff can only show that there are serious questions going to the merits," rather than a likelihood of success, "a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are

---

[3] The *Winter* factors apply to both motions for TROs and for preliminary injunctions. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation modified). This is because the "elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A plaintiff must meet all four requirements—failure to satisfy his burden on even a single factor justifies denying relief. *See DISH Network Corp. v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011).

Ultimately, a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez*, 680 F.3d at 1072 (citation modified). Where, as here, the plaintiff seeks a "mandatory injunction"—an injunction that "orders a responsible party to take action"—relief must be denied "unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citations omitted). Mandatory injunctions are "particularly disfavored" because they "go[] well beyond simply maintaining the status quo." *Id.* (citation omitted).

Courts "must assure [themselves] that the constitutional standing requirements are satisfied before proceeding to the merits," however. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Id.* Additionally, the "burden of establishing Article III standing remains at all times with the party invoking federal jurisdiction"—here, Pate. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 655 (9th Cir. 2002).

**IV.   DISCUSSION**

Because Pate has not established that he has standing to pursue injunctive relief against the NAIA, he is not entitled to such relief. The merits of his claims thus need not be addressed at this stage.

**A.   Standing Requirements**

To establish standing, Pate must "demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [NAIA's] actions, and that the injury can be redressed by

a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). The "injury-in-fact" must be (1) "concrete and particularized" and (2) "actual or imminent" rather than "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Because Pate seeks injunctive relief, he must also "demonstrate a real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946 (quotation marks omitted). The repeated injury must be "similar" to any injury he suffered previously. *See id.* at 948 (citation omitted). Past harms "do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy," but they can serve as "evidence bearing on whether there is a real and immediate threat of repeated injury." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (citation modified).

A "person exposed to a risk of future harm may pursue forward-looking, injunctive relief to *prevent* the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (emphasis added). Thus, "[t]o obtain preliminary injunctive relief, a plaintiff must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury." *Wolfe v. Logan*, 2023 WL 2347133, at *3 (C.D. Cal. 2023) (citation omitted). In other words, "[a] preliminary injunction will do nothing to repair alleged past harms." *Id.* Further, even if a plaintiff establishes a statutory violation, he must still have suffered a "concrete injury," as a "bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

**B.   Pate Has Not Alleged an Injury-in-Fact Justifying Injunctive Relief**

Pate does not challenge "a governing body's general ability to set limits on how long a college athlete may play college sports." (Doc. 12 at 1–2.) Instead, as he clarified at oral argument, he challenges the NAIA's season-splitting rule that requires athletes with only one term of attendance remaining to choose between playing in the fall or spring semesters for sports that span both. (*See id.* at 2 (arguing that he is "seeking a waiver or

exception [of] the season-splitting dilemma that can potentially be created by the Terms of Attendance rule in combination with the Eligibility Rule").) Pate's claims ultimately concern the NAIA's past conduct, which has already injured him and is unlikely to reoccur. The NAIA allegedly harmed Pate by implementing the season-splitting rule that prevented him from competing in the Spring 2025 portion of the 2024–25 season and misrepresented his eligibility status to him so that he was unable to decide which portion of the basketball season in which to play to make the most of his remaining eligibility. (*See id.* at 2–3; *id.* at 7 ("The root of the misunderstanding, which culminated in the surprising and abrupt end to Pate's final Season of Competition, was the NAIA's initial negligent misrepresentation.").) The injury Pate alleges he suffered thus stems from the loss of the Spring portion of the 2024–25 basketball season.

The essence of Pate's motion for injunctive relief now is that, to make him whole for the NAIA's application of the season-splitting rule against him in the Spring 2025 semester, the NAIA should give him another year of competition. (*See* Doc. 3 at 12–13 ("[T]he NAIA must be enjoined from enforcing its Attendance-Based Restrictions against Pate for the 2025-26 season, since NAIA's own mistakes caused Pate to exceed the Terms of Attendance restriction."); Doc. 12 at 2 (seeking a "waiver or exception"); *id.* at 9 ("Pate's request would only reverse the harm to Pate's athletic career.").) But as stated above, injunctive relief is not intended to and cannot remedy past harms. *See Fortyune*, 364 F.3d at 1081; *Wolfe*, 2023 WL 2347133, at *3.

Further, Pate has not established a "real and immediate threat of repeated injury in the future" "similar" to the injury he alleges he suffered previously. *Chapman*, 631 F.3d at 946, 948 (quotation marks and citation omitted). Pate is not likely to be misled as to the status of his eligibility in the 2025–26 season; he acknowledges he has exceeded his attendance-based eligibility, so he knows his current eligibility status. (*See* Doc. 1 ¶ 95.) *See McMillan v. Lowe's Home Ctrs., LLC*, 2016 WL 2346941, at *4 (E.D. Cal. 2016) (dismissing claim for injunctive relief because the "complaint [did] not allege [the plaintiff] continue[d] to be misled by the misrepresentations or [would] likely be misled again").

   Nor is the NAIA likely to enforce the season-splitting rule against him again because, put simply and as he concedes, Pate's eligibility ran out once he "attend[ed] Park Full-Time during the 2024-25 academic year." (Doc. 3 at 12.) As of now, Pate has "accumulated 13.33 [semesters], which [is] 1.33 [semesters] over the limit of twelve." (*Id.*) Pate thus does not have *any* semesters of eligibility remaining. He does not possess a single semester of eligibility that would require him to choose between playing in the Fall 2025 or Spring 2026 semesters, nor has he argued he will ever be in such a position again, so he is not likely to be harmed by the season-splitting rule in the future. (*See* Doc. 1 ¶ 95; Doc. 3 at 12–13.) *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (stating that plaintiffs seeking injunctive relief must "demonstrate that they are realistically threatened by a *repetition* of the violation" (quotation marks omitted)); *Strayer v. Idaho State Patrol*, 2022 WL 685422, at *2 (9th Cir. 2022) (mem. decision) (per curiam) ("To the extent the plaintiffs seek prospective injunctive relief for violations of federal law, they fail to allege a sufficient likelihood that they will be wronged again in a similar way to have standing for prospective injunctive relief."). Even if Pate is correct that the NAIA violated the Sherman Act, this alone does not give him standing to pursue injunctive relief without a concrete future injury. *See Spokeo*, 578 U.S. at 341.

   At bottom, Pate does not face any future harm that injunctive relief could prevent. *See TransUnion*, 594 U.S. at 435. If Pate had filed suit in Spring 2025, when he learned he had exhausted his eligibility, and argued that the NAIA's season-splitting policy would deprive him of his ability to play in the Spring 2025 semester, he would have had standing for injunctive relief. At that point, the harm would not have fully materialized and the potential loss of the Spring 2025 portion of the basketball season would be imminent.[4] *See Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 n.3 (8th Cir. 2021) ("The

---

[4] Although Pate mentions "other similarly situated athletes who face the season-splitting dilemma" in his briefing, (*see* Doc. 12 at 2), this is not a class action and he is the only plaintiff. Pate cannot seek injunctive relief to benefit non-parties. *See Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) ("The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*. While party-specific injunctions sometimes advantage non-parties, they do so only incidentally." (citation modified)).

purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will *surely result* without their issuance." (emphasis added) (quoting *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018))). But the parties now stand on the other side of the Spring 2025 semester, and Pate's argument that he will now suffer injury if the NAIA does not give him a compensatory season of competition does not meet the requirements for standing to obtain injunctive relief. *See Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) ("Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief.").

The Court is not unsympathetic to Pate's situation, but injunctive relief is not available to remedy past harm, as Pate desires. Ultimately, Pate may be entitled to damages for his claims against the NAIA, *see id.*, but he has not met his burden to show that he has standing to pursue injunctive relief, *Bates*, 511 F.3d at 985; *Scott*, 306 F.3d at 655.

Accordingly,

**IT IS ORDERED** that Pate's motion for a TRO and preliminary injunction (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that the NAIA shall answer or otherwise respond to the Complaint within **14 days** of this Order, unless Pate moves to amend his Complaint or obtains the NAIA's written consent to file an amended complaint on or before that date.[5]

Dated this 20th day of October, 2025.

Honorable Sharad H. Desai
United States District Judge

---

[5] At oral argument, Pate indicated that he intends to amend his complaint to add additional parties.